NOTICE

Decision filed July 28, 2017. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 140493

NO. 5-14-0493

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Marion County. |
| v. | ) ) | No. 12-CF-345 |
| ROBIN FRAZIER, | ) ) | Honorable Mark W. Stedelin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Moore and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1     After a bench trial in the circuit court of Marion County, defendant, Robin Frazier, was convicted of criminal sexual assault based upon a position of trust, supervision, or authority (720 ILCS 5/11-1.20(a)(4) (West 2010)) and sentenced to four years in the Department of Corrections to be followed by three years to life of mandatory supervised release. She was also fined and assessed fees and costs totaling $597. The two issues raised in this direct appeal are (1) whether defendant was denied effective assistance of counsel when trial counsel filed a motion to dismiss mid-trial on the basis that the

1

information did not state an offense and (2) whether the trial court correctly imposed $597 in fines, fees, and costs. We affirm.

¶ 2                                  BACKGROUND

¶ 3     Defendant was employed as a counselor by Kemmerer Village, a residential treatment facility for emotionally and behaviorally disturbed children ages 12 to 18. Kemmerer Village is located near Assumption, Illinois, and consists of six cottages. On July 24, 2011, a little after 10 p.m., defendant clocked out for the night after doing a final bed check of the female residents assigned to her cottage. As defendant was leaving her parking spot, one of the female residents, B.H., age 17, opened the passenger door and got in defendant's car. Defendant was aware of B.H.'s history of running away from not only Kemmerer Village but also previous group homes where she resided.

¶ 4     Defendant said she "freaked out" when B.H. entered her car and used "bad judgment" when she drove off the Kemmerer Village property with B.H. in her car. B.H. asked defendant to take her to Chicago. Defendant refused but decided to take B.H. to B.H.'s mother's home in Mt. Vernon. B.H. had previously told defendant she wanted to see her mother.

¶ 5     Defendant drove for about four hours when she started getting drowsy and stopped at a hotel in Salem. Defendant and B.H. disagreed as to what took place at the hotel. Defendant testified that she and B.H. rested for a few hours at the hotel before resuming driving. B.H. testified they drank alcohol, smoked pot, and then defendant performed oral sex on B.H.

2

¶ 6 The instant charge came about after B.H.'s mother called authorities upon discovering inappropriate text messages between defendant and B.H. On August 11, 2011, a Department of Children and Family Services (DCFS) investigator, Michael Parkin, was assigned to investigate a report concerning B.H. The matter was ultimately turned over to the Illinois State Police (ISP) because DCFS did not have the manpower to conduct the investigation. ISP Special Agent Holly Finney interviewed defendant at defendant's residence.

¶ 7 Agent Finney testified that defendant admitted to engaging in oral sex with B.H.; however, defendant's statement was neither recorded nor put into writing. Defendant was not arrested as a result of the admission. Over a year later, on December 3, 2012, defendant was charged by information with one count of criminal sexual assault and issued a notice to appear for her first court appearance on December 18, 2012.

¶ 8 On October 1, 2013, a bench trial ensued. The State's first witness was B.H. After B.H. answered four questions, defense counsel asked to approach the bench, where he filed a motion to dismiss on the basis that the information "fails to adequately define the nature of the position of trust, authority, or supervision held by [defendant]." Defendant relied on the Third District case of *People v. Sparks*, 221 Ill. App. 3d 546 (1991), which holds that the charging document, alleging the offense, must set out the nature of the alleged position of trust, authority, or supervision.

¶ 9 The State responded by pointing out that the defense wanted to file the motion after jeopardy attached so that the State would be unable to correct the deficiency. The

3

State argued it was unprepared to respond to the motion at that time and wanted the opportunity to research the issue to see if there were more recent cases or cases from other districts that hold contrary to *Sparks*. The State noted it had six witnesses ready for trial, many of whom were required to drive for hours to get to court.

¶ 10 Defense counsel replied that, based upon his research, *Sparks* was good law, and he failed to find any cases from other districts or our supreme court that modified *Sparks*. He asserted he was not in a position to file the motion to dismiss before trial as jeopardy would not have attached. If he filed the motion before trial, then the State would have been allowed to amend the information. Under such circumstances, defense counsel asserted he would have been guilty of ineffective assistance of counsel.

¶ 11 Defense counsel did not object to giving the State time to research the issue. A discussion then ensued between the State, defense counsel, and the trial court as to how to proceed. Ultimately, the trial court decided to continue the trial and decide defendant's motion to dismiss after the State had time to respond.

¶ 12 The State presented its case in chief. Witnesses included B.H., her mother, a clinical manager at Kemmerer Village, a general manager at the Guesthouse Inn, DCFS Investigator Michael Parkin, and Agent Holly Finney. After the witnesses testified, defense counsel moved for a directed verdict. The trial court denied defendant's motion. The trial was then recessed to allow argument on defendant's motion to dismiss.

¶ 13 On October 31, 2013, the trial court entered an order denying defendant's motion to dismiss, stating, *inter alia*, as follows:

4

"The court files reveal that the [d]efendant had 7 separate appearances in court prior to trial. The [d]efendant waived preliminary hearing on January 15, 2013. The [d]efendant received the specific answers to her discovery request on August 23, 2013. The [d]efendant opposed the continuance of the bench trial on August 20, 2013. At no time did the [d]efendant seek the dismissal of the [i]nformation or file a request for bill of particulars. It is clear that the [d]efendant was sufficiently appraised of the offense to prepare a defense."

The trial court noted that because the information included the victim's initials, date of offense, nature of the contact between defendant and victim, as well as the allegation that defendant held a position of trust, supervision, or authority over the victim, there was sufficient specificity in the charging instrument.

¶ 14    The bench trial resumed on May 13, 2014. The defense called a detective from the Christian County sheriff's department, who testified that in May 2011, the victim falsely accused another individual of a separate sexual assault. Defendant then took the stand and testified that no sexual activity occurred between her and B.H. on the date in question and that she never confessed or admitted to having sexual relations with B.H. during her interview with Agent Finney.

¶ 15    After hearing all the evidence, the trial court found defendant guilty of criminal sexual assault and sentenced her to four years in the Department of Corrections, followed by three years to life of mandatory supervised release, and imposed fines, fees, and costs in the amount of $597. Defendant filed a timely notice of appeal.

5

¶ 16                              ANALYSIS

¶ 17                        I. Ineffective Assistance

¶ 18    The first issue on appeal is whether defendant was denied effective assistance of counsel when defense counsel filed a motion to dismiss mid-trial on the basis that the information did not state an offense. Defendant argues that by filing the motion mid-trial, defense counsel subjected her to a higher standard of review than filing prior to trial, which equates to a serious lapse of representation that cannot be dismissed as trial strategy. We disagree.

¶ 19    In order to succeed on a claim of ineffective assistance of counsel, it must be shown that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the challenged action or inaction was the product of sound trial strategy. *Id.* at 689. Matters of trial strategy are generally immune from ineffective assistance of counsel claims and will not support such claims unless counsel's strategy was so unsound that counsel completely failed to conduct any meaningful adversarial testing of the State's case. *People v. Patterson*, 217 Ill. 2d 407, 441 (2005).

¶ 20    Defendant insists trial counsel erred by waiting to challenge the sufficiency of the charge until the trial started, thereby subjecting her to a higher standard of review.

However, if an ineffective assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, then a reviewing court need not decide whether counsel's performance was constitutionally deficient. *People v. Griffin*, 178 Ill. 2d 65, 74 (1997); *People v. Albanese*, 104 Ill. 2d 504, 527 (1984). Prejudice exists only when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Under the circumstances presented here, defendant fails to convince us that she suffered any prejudice as a result of trial counsel's failure to file a pretrial motion to dismiss on the basis that the information lacked specificity.

¶ 21　　A defendant has a fundamental right, as set forth in section 111-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3 (West 2010)), to be informed of the nature and cause of the criminal accusations made against him or her. *People v. Nash*, 173 Ill. 2d 423, 428-29 (1996). It is well settled that if an indictment or information is challenged before trial in a pretrial motion, the charging instrument must strictly comply with the pleading requirements of section 111-3 of the Code. *Id.* at 429; *People v. DiLorenzo*, 169 Ill. 2d 318, 321-22 (1996). If the indictment or information does not strictly comply with the pleading requirements of section 111-3 of the Code, the proper remedy is dismissal. *People v. Cuadrado*, 214 Ill. 2d 79, 87 (2005). If, on the other hand, a charging instrument is attacked mid-trial, the applicable standard for a challenge is the prejudice standard. *Id.*

¶ 22    In the instant case, even assuming *arguendo* that the information was technically deficient and defense counsel raised the issue in a pretrial motion, the trial court would have undoubtedly granted the motion to dismiss. The State would then have been allowed to amend the information to add more specificity as to the nature of the position of trust, authority, or supervision defendant held over B.H. Under these circumstances, we fail to see how defendant was prejudiced by her attorney's decision to wait until mid-trial to file the motion to dismiss.

¶ 23    Defendant relies on *People v. Spann*, 332 Ill. App. 3d 425 (2002), in support of her argument that the timing of counsel's motion to dismiss (mid-trial as opposed to pretrial) shows his misapprehension of the law and constitutes ineffective assistance. However, *Spann* is clearly distinguishable from the case at bar. In *Spann*, defense counsel was found to be ineffective where he failed to challenge the indictment, failed to move to quash arrest, failed to move to suppress evidence, failed to conduct cross-examination of the State's only witness, and conceded during closing the defendant's guilt to a lesser included offense with no competent challenge to the more serious charges with which the defendant was charged. *Id.* at 446. Thus, in *Spann* there was a myriad of mistakes by defense counsel which the reviewing court could not ignore.

¶ 24    In the instant case, even though defense counsel's strategy was unsuccessful, we cannot say it constitutes ineffective assistance of counsel. Unlike trial counsel in *Spann*, defense counsel here did an admirable job of defending his client. Defense counsel presented not only the testimony of defendant, who denied the allegations, but also found and produced a detective who testified B.H. falsely accused another adult of sexual

8

assault on a previous occasion after running away from Kemmerer Village. We find defendant's reliance on *Spann* misplaced.

¶ 25 Despite defendant's contention to the contrary, we find the instant case more analogous to *People v. Davison*, 292 Ill. App. 3d 981 (1997). Even though *Davison* addressed a postconviction proceeding after a guilty plea, its rationale is applicable here. In *Davison*, the defendant asserted an ineffective assistance of counsel claim on the basis "that trial counsel erred by not challenging the sufficiency of that charge based on its failure to include all the elements" of the crime with which he was charged. *Id.* at 986. In rejecting the defendant's argument, the *Davison* court specifically stated:

> "Considering first the prejudice prong of *Strickland*, we fail to see what possible prejudice defendant might have suffered as a result of his trial counsel's failing to file a pretrial motion to dismiss count VI on the ground that it did not adequately charge home invasion. Had trial counsel done so (and assuming *arguendo* the count was technically deficient), the trial court undoubtedly would have granted the motion to dismiss, and the State would then have filed an amended count, adding any previously missing statutory language. The record before us makes clear that defendant was willing to plead guilty to home invasion and contains no suggestion that (1) he was misled about the factual basis for the charge, or (2) the count's alleged technical deficiency affected his decision to plead guilty. Accordingly, defendant's petition fails the *Strickland* prejudice prong because it does not support a claim that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. [Citation.]" *Id.* at 987.

Similarly, the outcome of the instant proceeding was not affected by defense counsel's filing the motion mid-trial as opposed to pretrial because the State would have refiled the charges.

¶ 26    After careful consideration, we conclude that defendant has failed to show she suffered prejudice as a result of trial counsel filing the motion to dismiss mid-trial rather than pretrial. Thus, defendant has not met the second prong of *Strickland*. No further discussion of defendant's claim of ineffective assistance is necessary.

¶ 27                                              II. Fines

¶ 28    The other issue raised in this appeal is whether the trial court correctly imposed fines, fees, and costs. Defendant specifically asserts the State Police Operations fee (705 ILCS 105/27.3a(1.5), (5) (West 2010)) should be reduced from $10 to $5 and the Violent Crime Victims Assistance fee (725 ILCS 240/10(b) (West Supp. 2011)) should be reduced from $100 to $80. The State responds that defendant has forfeited this issue by failing to object at the sentencing hearing and failing to file a motion to reconsider the sentence. Under the circumstances presented here, we agree with the State.

¶ 29    Failure to object at trial and in a posttrial motion waives the objection. *People v. Naylor*, 229 Ill. 2d 584, 592 (2008); *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). When a defendant fails to preserve an issue for appeal, it is forfeited and cannot be considered unless it amounts to plain error pursuant to Illinois Supreme Court Rule 615(a). *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 54. The plain error rule specifically states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall

be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a).

¶ 30    In *People v. Taylor*, 2016 IL App (1st) 141251, our colleagues in the First District considered a defendant's challenge to the imposition of the $2 Public Defender Records Automation Fund Fee (55 ILCS 5/3-4012 (West 2012)) and the $2 State's Attorney Records Automation Fund Fee (55 ILCS 5/4-2002.1(c) (West 2012)) on the basis that they violated the prohibition on *ex post facto* laws since both assessments were enacted after the defendant committed the crimes. The defendant did not challenge any of the fines or fees imposed by the trial court at the time of sentencing; nevertheless the State addressed the merits of the defendant's argument despite the forfeiture. *Taylor*, 2016 IL App (1st) 141251, ¶ 28. While the *Taylor* court ultimately addressed the merits of the issue, the court noted it would most likely not have done so had the State raised the issue of forfeiture:

> "Had the State argued forfeiture, we would have been hard-pressed to overlook it, given the insubstantial nature of the fees assessed. See Ill. S. Ct. R. 615(a) ('Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.'). And the rubric typically employed by appellate counsel—that the judgment imposing allegedly improper fines and fees is void—is no longer viable in light of *People v. Castleberry*, 2015 IL 116916, ¶ 17 (abrogating rule that sentence not conforming to statutory requirements is void). We encourage trial counsel to address such claimed errors in the trial court instead of risking

11

forfeiture on appeal. But because the State did not argue forfeiture in this case, we will address the claims on their merits." *Id.*

In the instant case, the State vehemently argues forfeiture.

¶ 31 The State insists defendant forfeited the issue by failing to file a motion to reconsider her sentence. The State further asserts that even given the small amount of money at issue, it is unable to concede to the arguments made by defendant as to the appropriate calculation because the record fails to show the particular fines relied upon by the trial court to calculate the fines at issue. We agree with the State that defendant forfeited review of this claim because she failed to challenge her fines and fees at the sentencing hearing or in a posttrial motion. What makes this case unique is that the record is clear that the trial court did not order defendant to pay all the fines and fees it could have ordered her to pay.

¶ 32 During the sentencing hearing, the following colloquy concerning fines and fees occurred:

"[Assistant State's Attorney]: Your Honor, is the Court assessing the required statutory fines? I should have recommended them, but I believe by statute there are various particular fines with this offense. There is by statute the $200 sexual assault fine pursuant to 730 ILCS 5/5-9-1.7. There is the $500 sex offender fine pursuant to 730 ILCS 5/5-9-1.15. Additionally, the VCVA fee. She has no prior criminal history, so obviously the DNA fee would need to be assessed.

[The Court]: Well, as to the VCVA fee and the DNA fee we'll assess those. As for the others, we'll assess them but find them uncollectible."

12

By finding the fees uncollectible, the trial court actually reduced the amount defendant otherwise would have had to pay by $700. Despite this considerable reduction, defendant still feels compelled to argue over what amounts to $25.

¶ 33    If ever there was a time to invoke the forfeiture rule, this is it. Here, as in many cases, " '[t]he judicial and clerical time expended on accurate calculation of the precise assessment of these monies, much of which may never be collected, is phenomenal.' " *People v. Rexroad*, 2013 IL App (4th) 110981, ¶ 56 (quoting *People v. Folks*, 406 Ill. App. 3d 300, 309 (2010)). To remand this case would be nothing short of a complete waste of judicial resources.

¶ 34    Finally, we point out that plain error exists only where the essential fairness of a trial has been undermined and "only in situations which 'reveal breakdowns in the adversary system,' as distinguished from 'typical trial mistakes.' [Citation.]" *People v. Keene*, 169 Ill. 2d 1, 17 (1995). Thus, plain error is not present here. The alleged $25 error in no way undermines the essential fairness of the trial, especially in light of the fact that the trial court assessed an additional $700 in fees, but found them uncollectible.

¶ 35                                                  CONCLUSION

¶ 36    For the foregoing reasons, we affirm defendant's conviction and sentence.


¶ 37    Affirmed.

13

2017 IL App (5th) 140493

NO. 5-14-0493

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 12-CF-345 |
| | ) | |
| ROBIN FRAZIER, | ) | Honorable |
| | ) | Mark W. Stedelin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**      July 28, 2017
_____

**Justices:**       Honorable Richard P. Goldenhersh, J.

Honorable James R. Moore, P.J., and
Honorable Thomas M. Welch, J.,
Concur
_____

**Attorneys**      Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy
**for**         Defender, Eun Sun Nam, Assistant Appellate Defender, Office of the
**Appellant**      State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle,
            Mt. Vernon, IL 62864
_____

**Attorneys**      Hon. Matt Wilzbach, State's Attorney, Marion County Courthouse, P.O.
**for**         Box 157, Salem, IL 62881; Patrick Delfino, Director, David J. Robinson,
**Appellee**      Acting Deputy Director, Jennifer M. Bernhardt, Kelly M. Stacey, Staff
            Attorneys, Office of the State's Attorneys Appellate Prosecutor, Fifth
            District Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
            Vernon, IL 62864
_____