# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Gaytan*, 2013 IL App (4th) 120217

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE GAYTAN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0217 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | May 21, 2013<br><br>June 11, 2013<br>May 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for unlawful possession of cannabis with intent to deliver and unlawful possession of cannabis arising from a traffic stop for having a license plate obstructed by a trailer hitch, the trial court erred in denying defendant's motion to suppress, since section 3-413(b) of the Illinois Vehicle Code prohibits obstructing materials attached to the plate itself, not objects such as the trailer hitch here, which was not connected to the plate and only partially obstructed the plate; therefore, section 3-413(b) did not provide a basis for stopping defendant. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 10-CF-864; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal     Michael J. Pelletier, Karen Munoz, and Colleen Morgan, all of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel     JUSTICE KNECHT delivered the judgment of the court, with opinion. Justices Pope and Holder White concurred in the judgment and opinion.

## OPINION

¶ 1     In September 2010, a McLean County grand jury indicted defendant, Jose Gaytan, for unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2010)) and unlawful possession of cannabis (720 ILCS 550/4(d) (West 2010)). Defendant filed a motion to suppress evidence, arguing the police officers did not have articulable suspicion a crime had been committed or was being committed when they stopped defendant for an obstructed license plate. In October 2011, the trial court held a stipulated bench trial and found defendant guilty. The court sentenced defendant to 30 months' probation, including a condition that he serve 120 days in the county jail.

¶ 2     On appeal, defendant argues the trial court improperly denied the motion to suppress evidence. Defendant asserts section 3-413(b) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/3-413(b) (West 2010)) only prohibits materials physically attached to the registration plate itself and not obstructions, such as a trailer hitch, not attached to the registration plate. We agree and reverse.

¶ 3     I. BACKGROUND

¶ 4     In September 2010, a McLean County grand jury indicted defendant for unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2010)) and unlawful possession of cannabis (720 ILCS 550/4(d) (West 2010)). These charges resulted from a traffic stop and a search of the vehicle in which defendant was a passenger.

¶ 5     In November 2010, defendant filed a motion "to quash arrest and suppress evidence" arguing the traffic stop resulting in his arrest was improper. (We note the proper title for such a motion is "motion to suppress evidence." See *People v. Hansen*, 2012 IL App (4th) 110603, ¶¶ 61-63, 968 N.E.2d 164.) In January 2011, the trial court held a hearing on the motion. Officers Karl Ladtkow and Dan Crowley of the Chenoa police department were running stationary radar detection on Interstate 55. Ladtkow's attention was drawn to a

purple Lincoln Mark V because of "the color of the vehicle and the big tires on the vehicle." As the vehicle passed, Ladtkow observed "the vehicle had a trailer hitch on the back and there was a ball on the back that obscured the license plate" and the trailer hitch "was covering up the bottom of the plate." Ladtkow testified the hitch was covering some of the numbers on the plate and the plate was obstructed when he was following behind the vehicle. On cross-examination, Ladtkow explained he was not able to see all of the numbers on the plate "unless I got right up on to the bumper of the vehicle and be able to look over that and see, you know, what number that was." Ladtkow admitted once he stopped the vehicle and walked up to it, he was able to clearly see the license plate despite the trailer hitch.

¶ 6    Defendant submitted into evidence a photograph of the Lincoln taken from an angle directly behind the vehicle and from a height approximately above the rear bumper. The trial court observed "the ball hitch in the photograph is not obstructing any of the numbers" but "the photo is also obviously taken by someone who is standing right at the rear of the vehicle, and certainly the officer testified that he was further back and that the angle, therefore, was different and the ball was obstructing one of the numbers." The court denied defendant's motion to suppress because the hitch obstructed the license plate.

¶ 7    In April 2011, defendant filed a motion to reopen evidence to permit introduction of a video recording of the traffic stop. By written order, the trial court granted defendant's motion to reopen evidence and permitted introduction of the video recording.

¶ 8    In July 2011, the trial court held a hearing on defendant's motion to reconsider. Defendant argued the statute "impl[ies] a cover, something attached to the plate." A tow hitch "is something that's not on the plate. It's in front of it as you're going down the road," but if the plate is covered by that particular angle, "all you had to do is just move over a little bit to the left or the right and the letter is clearly discernible." In making its ruling, the trial court explained the videotape "really doesn't clear up for me one way or the other whether this thing blocked part of the letters or not. It does appear that maybe it blocks a little piece of one of them on the video, but I can't tell if it really does or it's just grainy from the video itself." The court denied the motion to reconsider.

¶ 9    In October 2011, the trial court held a stipulated bench trial and found defendant guilty of unlawful possession of cannabis with intent to deliver. The court sentenced defendant as stated.

¶ 10    This appeal followed.


¶ 11                                    II. ANALYSIS

¶ 12    Defendant argues the trial court improperly denied the motion to suppress evidence. Defendant asserts (1) based on its statutory language and the doctrine of *ejusdem generis*, section 3-413(b) of the Vehicle Code (625 ILCS 5/3-413(b) (West 2010)) only "prohibits materials which physically obscure the registration plate itself and is not so expansive as to include legal use of trailer hitches and other similar vehicle accessories"; (2) the statute does not extend the requirement that the registration plate be "clearly visible" to momentary obstructions, such as properly installed trailer hitches; and (3) the police officers had no reason to believe a crime had been committed "by having a standard-issue trailer hitch which

made it difficult to view the registration plate from certain positions." Defendant asserts no Illinois case has directly construed the statutory language of section 3-314(b) and cites several out-of-state cases in support of his argument.

¶ 13    The State concedes the issue presented in this case is not controlled by Illinois precedent and argues (1) section 3-413(b)'s use of the terms "clearly visible" and "clearly legible" require "that a registration plate must not be obstructed and must be fully readable," and (2) "a registration plate that is fastened in a place that results in it being partially obscured by a trailer hitch" violates section 3-413(b), because the plate is not "clearly visible." The State cites *People v. White*, 113 Cal. Rptr. 2d 584 (Cal. Ct. App. 2001), and *Parks v. State*, 2011 WY 19, 247 P.3d 857 (Wyo. 2011), for the proposition "a majority of jurisdictions that have considered this issue have concluded that a trailer ball so positioned so as to partially obstruct a license plate constitutes a traffic violation."

¶ 14                              A. Standard of Review

¶ 15    In reviewing a trial court's ruling on a motion to suppress evidence, this court applies a two-part standard of review: we will reverse factual findings only if they are against the manifest weight of the evidence; however, *de novo* review applies to the trial court's ultimate ruling of whether reasonable suspicion or probable cause exists and whether suppression is warranted. *People v. Grant*, 2013 IL 112734, ¶ 12, 983 N.E.2d 1009; *People v. Mott*, 389 Ill. App. 3d 539, 542, 906 N.E.2d 159, 163 (2009).

¶ 16                          B. Fourth Amendment Traffic Stops

¶ 17    Generally, under the fourth amendment to the United States Constitution (U.S. Const., amend. IV), a police officer may lawfully stop a person when the officer has reasonable, articulable suspicion that the person has committed, or is about to commit, a crime. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). See also 725 ILCS 5/107-14 (West 2010) (statutory codification of *Terry* standard).

¶ 18    "Vehicle stops are subject to the fourth amendment's reasonableness requirement." *People v. Hackett*, 2012 IL 111781, ¶ 20, 971 N.E.2d 1058. An investigatory stop must be justified at its inception. *People v. Close*, 238 Ill. 2d 497, 505, 939 N.E.2d 463, 467 (2010). "A police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Hackett*, 2012 IL 111781, ¶ 20, 971 N.E.2d 1058. A police officer may stop a vehicle where he or she has reasonable suspicion to believe the driver is violating the Vehicle Code. *Mott*, 389 Ill. App. 3d at 544, 906 N.E.2d at 164. "In judging the police officer's conduct, we apply an objective standard: 'would the facts available to the officer at the moment of the seizure *** "warrant a man of reasonable caution in the belief' that the action taken was appropriate?' " *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467 (quoting *Terry*, 392 U.S. at 21-22). A police officer conducting a traffic stop need not always be correct but must be reasonable, and an officer's objectively reasonable mistake of fact rarely violates the fourth amendment. *People v. Cole*, 369 Ill. App. 3d 960, 967-68, 874 N.E.2d 81, 88 (2007). "However, a police officer who mistakenly believes a

violation occurred when the acts in question are not prohibited by law is not acting reasonably." *Cole*, 369 Ill. App. 3d at 968, 874 N.E.2d at 88. See also *Mott*, 389 Ill. App. 3d at 543, 906 N.E.2d at 164 ("Where a traffic stop is based upon a mistake of law, it is unconstitutional.").

¶ 19                                C. Section 3-413 of the Vehicle Code

¶ 20        Section 3-413(a) of the Vehicle Code provides registration plates for an automobile must be attached to the vehicle, "one in the front and one in the rear." 625 ILCS 5/3-413(a) (West 2010). Section 3-413(b) provides:

> "Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than 5 inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained in a condition to be clearly legible, *free from any materials that would obstruct the visibility of the plate*, including, but not limited to, glass covers and plastic covers. Registration stickers issued as evidence of renewed annual registration shall be attached to registration plates as required by the Secretary of State, and be clearly visible at all times." (Emphasis added.) 625 ILCS 5/3-413(b) (West 2010).

¶ 21        We note Public Act 97-743 (Pub. Act 97-743, § 5 (eff. Jan. 1, 2013)) amended section 3-413 and removed the language "including, but not limited to, glass covers and plastic covers" from section 3-413(b) and added sections 3-413(g) to (j). The new section 3-413(g) provides, "A person may not operate any motor vehicle that is equipped with registration plate covers." Pub. Act 97-743, § 5 (eff. Jan. 1, 2013) (adding 625 ILCS 5/3-413(g)).

¶ 22                                D. Comparative Illinois Cases

¶ 23        As defendant points out, the supreme court has not determined whether section 3-413(b) prohibits any object from partially covering or obstructing the registration plate or only prohibits covering or obstructing objects physically attached or adhered to the plate. Our research confirms the appellate court has not directly addressed this issue by published opinion. See *People v. Cosby*, 231 Ill. 2d 262, 286, 898 N.E.2d 603, 618 (2008) (tinted rear license plate cover was traffic violation supporting officer's traffic stop); *People v. Bradi*, 107 Ill. App. 3d 594, 599, 437 N.E.2d 1285, 1288 (1982) ("it *is* a violation to have a license plate so dirty that it is illegible" (emphasis in original)); *Mott*, 389 Ill. App. 3d at 547, 906 N.E.2d at 166 (This court addressed the material-obstruction statute, which prohibits objects placed or suspended between the driver and front windshield, as applied to an air freshener and concluded "the mere fact defendant had an air freshener hanging from her rearview mirror did not give rise to reasonable suspicion of a violation of section 12-503(c) [of the Vehicle Code (625 ILCS 5/12-503(c) (West 2004))].").

¶ 24        Defendant notes two appellate cases where the defendant's license plate was obstructed by a trailer hitch. In *People v. Miller*, 242 Ill. App. 3d 423, 424, 611 N.E.2d 11, 13 (1993), the police officer indicated he stopped the defendant's vehicle for three Vehicle Code violations, including a loud muffler, an expired license plate, and a trailer ball hitch, which

"somewhat obstructed the numbers on the license plate." This court noted "[e]ither violation could have provided ample reason" for the officer to stop the vehicle and issue a ticket. *Miller*, 242 Ill. App. 3d at 435, 611 N.E.2d at 20. However, the appellate court held the trial court could have concluded the officer was not credible when he testified about the expired license plate and obstruction and the officer made these observations after the defendant was impermissibly stopped for the loud muffler. *Miller*, 242 Ill. App. 3d at 436, 611 N.E.2d at 20. In *People v. Perez*, 258 Ill. App. 3d 465, 466, 631 N.E.2d 240, 241 (1994), the Fifth District considered whether the trial court properly found the deputy director of the Illinois State Police in indirect civil contempt for failing to produce documents the three defendants contended were necessary to show their traffic stops were pretextual. One of the defendants was stopped "because two balls of a trailer hitch obscured one of the numbers of the pickup truck's license plate and because the truck was observed to travel 1 1/2 feet over the white line on the edge of the road." *Perez*, 258 Ill. App. 3d at 467, 631 N.E.2d at 242. The appellate court rejected the defendant's claims and found the documents sought were "immaterial" and noted "[t]he alleged traffic violations in these cases, if established at the appropriate hearing, provide a reasonable basis for stopping a motor vehicle." *Perez*, 258 Ill. App. 3d at 472, 631 N.E.2d at 245.

¶ 25    These cases are of limited value as they were decided before the statutory amendment, as discussed below, that added the applicable language, and did not directly address whether a trailer hitch is a violation of section 3-413(b).

¶ 26                              E. The Parties' Out-of-State Cases

¶ 27    The parties' briefs include lengthy discussions of out-of-state cases considering whether a trailer hitch obstructing the defendant's license plate violated the relevant state statute.

¶ 28    Defendant relies on a Florida case. In *Harris v. State*, 11 So. 3d 462 (Fla. Dist. Ct. App. 2009), the Florida appellate court considered a Florida statute stating: " '[A]ll letters, numerals, printing, writing, and other identification marks upon the plates *** shall be clear and distinct and free from defacement, mutilation, grease, and *other obscuring matter*, so that they will be plainly visible and legible at all times 100 feet from the rear or front.' " (Emphasis in original.) *Harris*, 11 So. 3d at 463 (quoting Fla. Stat. § 316.605(1) (2006)). The appellate court concluded the statutory language " 'other obscuring matter' " related to "material placed over the plate" and "would not include a trailer hitch that is properly attached to the truck's bumper." *Harris*, 11 So. 3d at 463. Using the doctrine of *ejusdem generis*, the court found the obstructions must be on the plate and "[m]atters external to the tag, such as trailer hitches, bicycle racks, handicap chairs, u-hauls, and the like are not covered by the statute." *Harris*, 11 So. 3d at 463-64. We note the Florida statute in *Harris* included a requirement that "[n]othing shall be placed upon the face of a Florida plate except as permitted by law or by rule or regulation of a governmental agency." Fla. Stat. § 316.605(1) (2006).

¶ 29    The State primarily relies on two cases from California and Wyoming. In *White*, the California appellate court found the statute imposed two obligations "that the plate be clearly visible when mounted on the vehicle and that it also be clearly legible." *White*, 113 Cal. Rptr.

2d at 586. The appellate court concluded "[a] license plate mounted in a place that results in it being partially obstructed from view by a trailer hitch ball violates [the California Vehicle Code] and, thus, provides a law enforcement officer with a lawful basis upon which to detain the vehicle and hence its driver." *White*, 113 Cal. Rptr. 2d at 586. The California statute did not include qualifying language about the types of materials obstructing the plate or plate covers.

¶ 30　　In *Parks*, 2011 WY 19, ¶ 3, 247 P.3d 857, the police officer could not read the defendant's license plate because a trailer hitch ball, mounted on the defendant's pickup truck's bumper, partially obstructed the plate. The Wyoming statute required the license plate to be " 'plainly visible' " and " '[m]aintained free from foreign materials and in a condition to be clearly legible.' " (Emphasis omitted.) *Parks*, 2011 WY 19, ¶ 8, 247 P.3d 857 (quoting Wyo. Stat. Ann. § 31-2-205(a)(iv) (LexisNexis 2009)). The Wyoming Supreme Court held "[t]he requirements that a license plate be 'plainly visible' and 'clearly legible' indicate that a license plate must not be obstructed in any manner." *Parks*, 2011 WY 19, ¶ 12, 247 P.3d 857. The court noted the Florida statute in *Harris* was "significantly different" as the Wyoming statute's "plainly visible" requirement was not connected to any class of "obscuring matter." (Internal quotation marks omitted.) *Parks*, 2011 WY 19, ¶ 15, 247 P.3d 857.

¶ 31　　　　　　　　F. Defendant's Statutory Interpretation Claim

¶ 32　　The parties disagree on whether section 3-413(b) prohibits materials attached to the plate or encompasses materials external to the plate obstructing visibility. Defendant asserts the doctrine of *ejusdem generis* supports the conclusion the language "glass covers and plastic covers" limits the "materials that would obstruct the visibility" language to materials physically covering the registration plate, and not any object, such as a trailer hitch, that may come between the plate and the viewer. The State asserts the "clearly visible" requirement applies to the "free from any materials that would obstruct the visibility of the plate" clause, and a registration plate must not be obstructed by any material, including objects not physically connected to the registration plate.

¶ 33　　　　　　　　1. *Statutory Interpretation in General*

¶ 34　　The interpretation of a statute presents a question of law that is reviewed *de novo*. *People v. Chapman*, 2012 IL 111896, ¶ 23, 965 N.E.2d 1119. The primary objective in construing a statute is to ascertain and give effect to the legislative intent, and the most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself. *Id.* Courts of review determine legislative intent by reading the statute as a whole and considering all relevant parts and not by considering words or phrases in isolation. *People v. Villa*, 2011 IL 110777, ¶ 35, 959 N.E.2d 634. This court will "not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *People v. Perry*, 224 Ill. 2d 312, 323-24, 864 N.E.2d 196, 204 (2007). When the statutory language is clear and unambiguous, it should be applied without interpretative aids. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47, 983

N.E.2d 993. If the statute is ambiguous, courts turn to extrinsic aids of statutory construction, including rules of construction and legislative history. *Id.* Where a statutory term is not otherwise defined it is appropriate to use a dictionary to ascertain its meaning. *Id.* ¶ 48, 983 N.E.2d 993.

¶ 35    "The doctrine of *ejusdem generis* provides that when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' " *People v. Davis*, 199 Ill. 2d 130, 138, 766 N.E.2d 641, 645 (2002). "The interpretation is justified on the ground that, if the general words were given their full and ordinary meaning, the specific words would be superfluous as encompassed by the general terms. If the legislature had meant the general words to have their unrestricted sense, it would not have used the specific words." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492, 905 N.E.2d 781, 799 (2009).

¶ 36                      2. *Plain Language of Section 3-413(b)*

¶ 37    Before using rules of statutory construction, we look to the plain language of the statute. Section 3-413(b) of the Vehicle Code provides the "registration plate shall at all times be *** free from any materials that would obstruct the visibility of the plate, including, but not limited to, glass covers and plastic covers." 625 ILCS 5/3-413(b) (West 2010). The Vehicle Code does not define the word "material" and "obstruct." "Material" is defined as "of, relating to, or consisting of matter." Webster's Third New International Dictionary 1392 (1976). See also *People ex rel. State Board of Health v. Jones*, 92 Ill. App. 447, 449 (1900) (defining "material" as "[r]elating to, or consisting of matter; corporeal; not spiritual; physical" (internal quotation marks omitted)). "Matter" is defined as "the substance of which a physical object is composed." Webster's Third New International Dictionary 1394 (1976). The relevant definition of "obstruct" is "to cut off from sight." Merriam-Webster's Collegiate Dictionary 801 (10th ed. 2000).

¶ 38    Obviously, a trailer hitch is a physical object capable of obstructing a viewer's visibility. Read in isolation, the phrase "any materials that would obstruct the visibility of the plate" appears to support the State's interpretation any physical object obstructing the visibility of the plate is a violation of section 3-413(b). However, the subject matter of this statute is registration plates and not vehicle accessories or attachments. The statute pertains to the requirements on a registration plate and that the "registration plate must at all times be *** free from" obstructing materials. An alternative definition of "free" is "clear." Merriam-Webster's Collegiate Dictionary 463 (10th ed. 2000). "From" is defined as "a function word to indicate a starting point of a physical movement or a starting point in measuring or reckoning or in a statement of limits" and is "used as a function word to indicate physical separation or an act or condition of removal, abstention, exclusion, release, subtraction, or differentiation." Merriam-Webster's Collegiate Dictionary 467-68 (10th ed. 2000). Read in totality and applying the definition of "from" to the statute, a plain reading supports defendant's interpretation the registration plate must be physically separated from any material obstructing visibility of the plate. In other words, section 3-413(b) prohibits objects obstructing the registration plate's visibility that are connected or attached to the plate *itself*.

¶ 39    The State's interpretation is premised on the "clearly visible" and "clearly legible" language contained in the clause addressing the plate's visibility, legibility, "place and position," and "condition." This interpretation appears to reword the statute by applying requirements from other clauses of the statute to the relevant clause for the conclusion any object partially obstructing a police officer's visibility of the plate causes the plate to not be "clearly visible" and is a violation of section 3-413(b). This appears unworkable as, taken to its logical conclusion, it would prohibit any object such as a traffic sign, post, tree, or even another vehicle from obstructing a police officer's "clear visibility" of the plate. See *People v. Isaacson*, 409 Ill. App. 3d 1079, 1082, 950 N.E.2d 1183, 1187 (2011) ("[W]e presume the legislature did not intend absurdity, inconvenience, or injustice."). The second sentence of section 3-413(b) requires annual registration stickers attached to the registration plate must be "clearly visible at all times." This "at all times" language is noticeably absent from the first sentence of section 3-413(b), and its absence implies the legislature does not require the visibility of a registration plate to be unobstructed "at all times" from all angles. See *People v. Edwards*, 2012 IL 111711, ¶ 27, 969 N.E.2d 829 ("Where language is included in one section of a statute but omitted in another section of the same statute, we presume the legislature acted intentionally and purposely in the inclusion or exclusion."). Section 3-413(b) differs significantly from the California and Wyoming statutes discussed, because it has an additional obstruction requirement, similar to the Florida statute, and the clause "including, but not limited to, glass covers and plastic covers." Section 3-413(b)'s obstruction requirement differs in construction from the Florida statute, which includes the phrase " 'other obscuring matter.' " *Harris*, 11 So. 3d at 463.

¶ 40    Defendant, relying on the doctrine of *ejusdem generis*, asserts the language "including, but not limited to, glass covers and plastic covers" qualifies the term "material" in the clause to limit the obstructing material to an object like a glass or plastic cover. Unlike the Florida statute, the general words in the section 3-413(b) do not follow the enumeration of particular classes of things, *i.e.*, the statute does not read "free from glass covers, plastic covers, or any other materials that would obstruct the visibility of the plate." We note, the legislature often uses the phrase " 'including, but not limited to' " to indicate the list following is illustrative rather than exhaustive. *People v. Perry*, 224 Ill. 2d 312, 330, 864 N.E.2d 196, 208 (2007). If "materials" is restricted to those materials attached to or affixed to the registration plate, as the plain language implies, then a glass or plastic cover is an illustrative example of impermissible materials. This interpretation comports with our review of the legislative history.

¶ 41                              3. *Legislative History of Section 3-413*

¶ 42    Public Act 95-29, § 5 (eff. June 1, 2008) made substantive changes to the statutory language in section 3-413(b) (625 ILCS 5/3-413(b) (West 2006)). It removed language stating "Clear plastic covers are permissible as long as they remain clear and do not obstruct the visibility of the plates." Compare 625 ILCS 5/3-413(b) (West 2006), with 625 ILCS 5/3-413(b) (West 2008). In the Senate, Senator Munoz testified this change was to make it "abundantly clear that clear license plate covers are illegal." 95th Ill. Gen. Assem., Senate Proceedings, Mar. 30, 2007, at 155 (statements of Senator Munoz). In the House,

Representative Hoffman testified this change was in response to license plate covers distorting the image and obstructing the visibility of license plates to evade photo radar and red light cameras. 95th Ill. Gen. Assem., House Proceedings, June 7, 2007, at 16 (statements of Representative Hoffman). Public Act 95-331, § 1005 (eff. Aug. 21, 2007) made technical changes to section 3-413.

¶ 43   Public Act 89-375, § 3 (eff. Aug. 18, 1995) added the statutory language "in a condition to be clearly legible" and replaced the language "foreign materials, including tinted glass or tinted plastic covers, and in a condition to be clearly legible" with "any materials that would obstruct the visibility of the plate, including, but not limited to, glass covers and tinted plastic covers" to section 3-413(b). Compare 625 ILCS 5/3-413(b) (West 1994), with 625 ILCS 5/3-413(b) (West 1996). In the House, Representative Biggert explained this change addressed registration plate covers and would permit clear plastic covers, so long as they are visible. 89th Ill. Gen. Assem., House Proceedings, May 25, 1995, at 144 (statements of Representative Biggert). Representative Dart asked whether this language would affect individuals whose registration plates have deteriorated. 89th Ill. Gen. Assem., House Proceedings, May 25, 1995, at 146 (statements of Representative Dart). Representative Biggert explained, "Well, the legislation does state that they shall be maintained in a condition to be clearly legible and then with a comma, 'free from any materials that would obstruct the visibility of the plate.' " 89th Ill. Gen. Assem., House Proceedings, May 25, 1995, at 146 (statements of Representative Biggert). Representative Dart responded, "Well, Representative, yeah that comma is very important because it sort of ends it there. It says that these license plates should be in a place in position to be clearly visible and shall be maintained, and this is your new language, 'shall be maintained in a condition to be clearly legible, free from materials that will obstruct visibility of the plate,' another comma and so on and so forth. Does this mean that individuals now, because of this, are going to be required to wash their license plates? Are they going to be required to repaint them themselves?" 89th Ill. Gen. Assem., House Proceedings, May 25, 1995, at 146 (statements of Representative Dart). Representative Biggert explained, "It's the intent of this legislation to deal with the covers and the fact that by putting on covers, that you are not changing the visibility of the plates." 89th Ill. Gen. Assem., House Proceedings, May 25, 1995, at 146-47 (statements of Representative Biggert).

¶ 44   The legislative history shows Public Act 89-375, § 3 (eff. Aug. 18, 1995), which added the relevant statutory language, legalized clear license plate covers not obstructing visibility of the license plate. See 625 ILCS 5/3-413(b) (West 1996). Then, Public Act 95-29, § 5 (eff. Jun. 1, 2008), prohibited clear license plate covers. See 625 ILCS 5/3-413(b) (West 2008). As plate covers were being used to evade detection by photo radar and red light cameras, the legislature decided to prohibit their use. See 95th Ill. Gen. Assem., House Proceedings, June 7, 2007, at 16 (statements of Representative Hoffman). The legislative history shows the legislature sought to restrict the use of materials such as license plate covers used to obstruct or distort the visibility of the registration plate and not merely any object coming between the viewer and the plate. The statutory language and history supports defendant's interpretation of section 3-413(b) and the conclusion the legislature sought to prohibit obstructing materials attached to the plate itself–such as covers–and not objects partially

obstructing the plate's visibility that are not connected to the registration plate. A trailer ball hitch, such as the one in this case, differs from a license plate cover in three ways: it has a legitimate purpose independent from the license plate (*i.e.*, to be used for towing), it is not affixed or connected to the plate itself, and it only partially obstructs the plate from certain angles.

¶ 45       We conclude section 3-413 does not provide a basis for justifying defendant's traffic stop at its inception. We express no opinion whether a trailer ball hitch obstructing visibility of the registration sticker would be a violation of section 3-413(b).

¶ 46                                   III. CONCLUSION

¶ 47       For the reasons stated, we reverse the trial court's judgment.

¶ 48       Reversed.